eFiled
9/4/2025 3:20:41 PM
Superior Court
of the District of Columbia

## IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| **THADDEAUS SIMS**, an individual, Columbia Rd NW, Washington, DC 20001 | Case No.: 2025-CAB-005923 Judge: |
| *Plaintiff*, v. | **JURY TRIAL DEMANDED** |
| **CONSUMER FINANCIAL PROTECTION BUREAU,** 1700 G street NW Washington, DC 20552, | |
| *Serve on*: Consumer Financial Protection Bureau – Office of the General Counsel 1700 G Street, NW Washington, DC 20552 | |
| *Defendants.* | |

## COMPLAINT

Plaintiff, Thaddeaus Sims ("Plaintiff" or "Mr. Sims"), by undersigned counsel, brings this

Complaint against the Consumer Financial Protection Bureau ("Defendant" or "CFPB"), for

violations of the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01

et seq.; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; and District of Columbia common law, including claims for retaliation, disparate treatment, hostile work environment, constructive discharge, and intentional infliction of emotional distress. In support of these claims, Plaintiff states as follows:

### INTRODUCTION

1.      The Consumer Financial Protection Bureau ("CFPB"), a federal agency headquartered in Washington, D.C., publicly positions itself as a champion of fairness and accountability in the financial sector. Yet within its own ranks, the agency has cultivated a workplace culture defined by racially discriminatory workload assignments, retaliation against whistleblowers and veterans, failure to provide reasonable accommodations to disabled employees, and a willful disregard for its own internal policies and federal civil rights obligations.

2.      Plaintiff Thaddeaus Sims is a 10-point Preference Disabled Veteran and a dedicated Black federal employee who has served at the CFPB for over a decade. Since 2014, Mr. Sims has consistently met or exceeded performance expectations in his role as a CN-51 Examiner. Despite this record, beginning in early 2023, he was subjected to unequal treatment, including being assigned disproportionately burdensome and complex work typically reserved for higher-classified employees—most notably white CN-60 examiners—without additional pay, recognition, or promotion opportunities.

3.      In September 2023, Mr. Sims began raising formal complaints regarding these inequities and violations of the agency's Collective Bargaining Agreement. His protected activity included reporting to supervisors, regional management, Human Resources, the Equal Employment Opportunity (EEO) office, and initiating a complaint with the U.S. Office of Special Counsel (OSC). In response, CFPB launched a campaign of retaliation that included fraudulent performance narratives, excessive scrutiny, exclusion from meetings, forced

duplicative trainings, denial of valid timekeeping entries, and use of pretextual disciplinary counseling—all designed to chill Mr. Sims's whistleblowing and deter other employees from asserting their rights.

4.    Shortly after Mr. Sims filed a complaint with OSC, alleging retaliatory conduct and a falsified performance memorandum dated July 16, 2025, CFPB abruptly altered the narrative the following week—shifting it from "consistent progress toward standards" to "surpassed standards." The OSC opened a formal investigation into this misconduct on July 18, 2025, further underscoring the seriousness of the retaliatory treatment and the protected nature of Mr. Sims's disclosures under federal whistleblower statutes and USERRA.

5.    The conduct directed at Mr. Sims reflects a broader pattern of systemic inequality within CFPB, particularly targeting Black employees classified as CN-51 who are regularly required to perform the duties of higher-level staff without equitable compensation or advancement. Several such employees have since resigned, while others remain silent out of fear of reprisal.

6.    Mr. Sims brings this action to hold the CFPB accountable for its violations of the Uniformed Services Employment and Reemployment Rights Act (USERRA), the Veterans' Preference Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act (ADA), the District of Columbia Human Rights Act (DCHRA), and Title VII of the Civil Rights Act of 1964. He seeks declaratory and injunctive relief, compensatory and equitable damages, and to expose and remedy an entrenched pattern of unlawful conduct that undermines the rights of marginalized federal employees.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States, including the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

8.    This Court has supplemental jurisdiction over Plaintiff's claims arising under the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01 et seq., and District of Columbia common law, pursuant to 28 U.S.C. § 1367, as such claims are so related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

9.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1), because Defendant is an agency of the United States with its principal office located in this judicial district, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District of Columbia.

**PARTIES**

10.    Plaintiff Thaddaeus Sims ("Plaintiff" or "Mr. Sims") is a resident of the State of Texas and a career federal employee who has served as an Examiner in the Supervision Division at the Consumer Financial Protection Bureau since approximately September 7, 2014. At all relevant times, Mr. Sims was classified at the CN-51 level and was subjected to the discriminatory and retaliatory actions described herein while assigned to and supervised by officials within the CFPB's headquarters in Washington, D.C.

11.    Defendant, Consumer Financial Protection Bureau ("Defendant" or "CFPB"), is an agency of the United States government established pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act, with its principal office located at 1700 G Street NW, Washington, D.C. 20552. At all times relevant to this Complaint, the CFPB acted through its agents, supervisors, employees, and representatives, including but not limited to Mr. Sims's direct supervisors and officials within its Human Resources and EEO offices, all of whom were acting within the scope of their employment.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Employment and Performance at the CFPB

12.    Plaintiff Thaddeaus Sims is a Black federal employee and a 10-point Preference Disabled Veteran who has served as an Examiner in the Supervision Division at the Consumer Financial Protection Bureau ("CFPB") since September 7, 2014. Throughout his tenure, Mr. Sims has consistently met or exceeded performance expectations, received positive feedback from managers and peers, and fulfilled all duties assigned to his position under the CN-51 classification.

13.    The CN-51 designation is a non-supervisory role within the CFPB's Consumer Response Division. Employees in this classification are not expected to lead projects or supervise others, and their workload is generally less intensive than those in higher classifications such as CN-60.

14.    From 2014 through 2022, Mr. Sims performed his duties with distinction, regularly handling consumer complaint reviews and resolution tasks across multiple jurisdictions, contributing to the agency's core mission of consumer financial protection.

### B. Discriminatory and Unequal Assignment of Workload

15.    Beginning in or around early 2023, CFPB managers, under the direction of supervisory officials within the Office of Consumer Response, began disproportionately assigning Mr. Sims workloads that significantly exceeded those given to his similarly situated white colleagues—many of whom were classified at the higher CN-60 level and were therefore expected to assume greater responsibilities.

16.    Mr. Sims was repeatedly tasked with the most complex complaint assignments, forced to conduct extended out-of-state site visits, and directed to perform administrative and logistical duties that fell outside the scope of his CN-51 role.

17.    On multiple occasions, Mr. Sims was required to conduct fieldwork or travel without adequate planning, reimbursement, or workload adjustment. These assignments placed

him under additional stress, disrupted his personal life, and placed him in situations where other CN-51 employees were not required to participate—constituting a form of discriminatory treatment in violation of the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1402.11(a), which prohibits discrimination based on race in the terms, conditions, and privileges of employment.

18.    Mr. Sims raised concerns internally and documented that Black employees in the CN-51 classification were routinely assigned greater workloads than their white peers, without pay equity or promotion opportunities. His reports highlighted a racially disparate impact in violation of both the DCHRA and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), which prohibits discriminatory practices in employment based on race.

19.    A regional manager acknowledged in a 2023 meeting that CN-51 employees were being used as "low-cost resources" to offset staffing gaps, yet CFPB took no action to remedy the disparity. Instead, the agency continued to exploit the labor of Black CN-51 employees without compensation, recognition, or proper classification.

**C. Retaliation Following Protected Activity**

20.    In or around September 2023, Mr. Sims began reporting these discriminatory assignment patterns and violations of the Collective Bargaining Agreement (CBA) to his direct supervisors, regional management, Human Resources, and the Equal Employment Opportunity (EEO) office.

21.    Shortly after initiating these complaints, Mr. Sims became the target of escalating retaliation. Supervisors began micromanaging his work, assigning him duplicative tasks, and subjecting him to redundant trainings and counseling sessions that were not imposed on other employees.

22.    Mr. Sims was issued a formal written counseling memorandum on or around July 16, 2025, that falsely alleged performance deficiencies and interpersonal issues. The memorandum initially stated that he was making "consistent progress toward standards."

However, after Mr. Sims filed a formal complaint with the U.S. Office of Special Counsel (OSC) on July 18, 2025, the narrative was abruptly changed to indicate that he had "surpassed standards." The timing and alteration of this documentation strongly suggest that the original memorandum was pretextual and retaliatory.

23.    The OSC has since opened a formal investigation into this retaliatory conduct—an uncommon and significant action given the agency's limited case intake and explicit focus on protecting federal whistleblowers. The investigation remains ongoing and will culminate in a formal determination.

24.    CFPB managers also rejected Mr. Sims's accurate timekeeping entries, accused him of insubordination for raising concerns, and attempted to portray him as "difficult" or "non-collaborative"—classic pretextual labels often used to discredit Black professionals who assert their rights in the workplace.

**D. Creation of a Hostile Work Environment**

25.    As the retaliation continued, Mr. Sims endured ongoing psychological strain, anxiety, and emotional distress. His supervisors isolated him from meetings, denied him collaboration opportunities, and refused to address his grievances in good faith.

26.    CFPB staff engaged in behavior intended to humiliate and degrade Mr. Sims, including excessive monitoring of his work, repeated requests to "justify" tasks already approved, and imposition of assignments previously delegated to other employees. This pattern of conduct created a hostile work environment in violation of the DCHRA, D.C. Code § 2-1402.11(a), and Title VII, both of which prohibit harassment that is severe or pervasive enough to alter the terms and conditions of employment.

27.    Despite his internal reports and continued efforts to resolve the matter through administrative channels, including formal EEO filings, Mr. Sims received no meaningful relief from CFPB leadership or Human Resources. Instead, the retaliatory conduct escalated,

increasing his mental health burden and reducing his ability to perform his job without fear of reprisal.

### E. CFPB's Failure to Provide Reasonable Accommodations and Interference with Rights

28.     As a result of the emotional and psychological toll caused by the hostile environment and retaliatory acts, Mr. Sims began experiencing symptoms of anxiety and work-related stress, which qualified him as an individual with a disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102(1), and the DCHRA, D.C. Code § 2-1401.02(5A).

29.     Mr. Sims sought accommodations to manage his symptoms, including workload modification and reassignment away from hostile supervisors. CFPB failed to engage in the interactive process required by the ADA, 42 U.S.C. § 12112(b)(5)(A), and failed to provide reasonable accommodations, thereby exacerbating his condition.

30.     Instead of acknowledging his request and providing support, the agency intensified its scrutiny and allowed the pattern of abuse to continue—constituting both a failure to accommodate and interference with Plaintiff's ADA rights, in violation of 42 U.S.C. § 12203.

### F. Constructive Discharge and Ongoing Harm

31.     The cumulative effect of the racially discriminatory workload, the retaliatory discipline, the hostile environment, and the refusal to accommodate his documented disability rendered Mr. Sims's working conditions intolerable.

32.     Though he has not yet resigned, Mr. Sims has been functionally stripped of opportunities for advancement, psychologically harmed, and left in a state of emotional distress due to the CFPB's persistent violations of federal and local law.

33.     Mr. Sims continues to suffer ongoing harm, including reputational damage, loss of professional growth opportunities, emotional anguish, and significant anxiety. He has exhausted

internal complaint processes and brings this action to vindicate his rights and seek accountability for the unlawful actions of his employer.

## COUNT I

## Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964 and the District of Columbia Human Rights Act (D.C. Code § 2-1402.11)

34.    Plaintiff re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.

35.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), makes it unlawful for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race.

36.    The District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1402.11, similarly prohibits discrimination in employment on the basis of race. This includes discrimination in job assignments, classification, discipline, and the allocation of workplace opportunities and burdens. The law expressly prohibits direct and indirect practices that result in disparate treatment or disparate impact based on race.

37.    Plaintiff is a black man employed as a CN-51 Examiner by Defendant CFPB. As detailed above, Plaintiff was consistently assigned heavier workloads, forced to perform duties outside his job classification, and required to travel under burdensome conditions not imposed on similarly situated white colleagues—particularly those at the CN-60 level who, by classification, were expected to assume greater responsibilities.

38.    Despite being qualified and having a history of positive performance, Plaintiff was denied parity in assignments, project leadership opportunities, and support resources, while his white counterparts were shielded from high-volume caseloads and allowed to focus on less intensive tasks. These employment decisions were made and sustained by Defendant's supervisors and managers with knowledge of Plaintiff's race and the disparate treatment.

39.    Plaintiff's complaints regarding the racially discriminatory workload were met not with corrective action but with increased scrutiny and retaliation, confirming that the unequal treatment was intentional and not the result of operational necessity. The Regional Director herself acknowledged that CN-51 employees—predominantly Black—were being used as "low-cost resources" to fill workforce gaps, yet no efforts were made to correct this racially stratified labor practice.

40.    Defendant's conduct constitutes unlawful race discrimination under Title VII and the DCHRA. By subjecting Plaintiff to materially less favorable working conditions on the basis of race, Defendant violated his rights to equal treatment in employment.

41.    As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer lost opportunities, emotional distress, reputational harm, and other compensable injuries for which he seeks all available legal and equitable relief.

## COUNT II

## Retaliation in Violation of Title VII of the Civil Rights Act of 1964 and the District of Columbia Human Rights Act

42.    Plaintiff re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.

43.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), prohibits employers from retaliating against an employee who has opposed any practice made unlawful by Title VII, filed a charge of discrimination, participated in an investigation, or engaged in other protected activity.

44.    The District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1402.61, similarly prohibits retaliation against individuals who oppose practices forbidden under the Act, or who participate in protected activity, including the filing of complaints or providing testimony in matters concerning workplace discrimination. The law also prohibits coercion, threats, interference, and requests or suggestions of retaliation.

45.     Additionally, D.C. Code § 32-1311 makes it unlawful for an employer to discharge, demote, suspend, threaten, harass, or in any manner retaliate against an employee for making internal or external complaints about violations of employment laws. Adverse actions taken within 90 days of the protected activity raise a rebuttable presumption of retaliation.

46.     D.C. Code § 2-381.04 further protects individuals who experience retaliation for lawful efforts to prevent or expose violations of anti-discrimination law, and provides remedies including back pay, reinstatement, and attorneys' fees.

47.     Plaintiff engaged in multiple forms of protected activity under these statutes. In September 2023 and the months that followed, Plaintiff reported unlawful racial disparities in workload assignments, disparate treatment under the Collective Bargaining Agreement, and broader patterns of discrimination targeting African American employees at the CN-51 level. He raised these concerns directly with his immediate supervisors, regional leadership, Human Resources, and the Equal Employment Opportunity (EEO) office.

48.     In direct response to these protected activities, Defendant subjected Plaintiff to a series of adverse employment actions, including but not limited to: issuing a retaliatory counseling memorandum containing false performance allegations, increasing Plaintiff's workload and scrutiny, reassigning him to undesirable or duplicative duties, subjecting him to excessive oversight and repeated training requirements, and rejecting valid timekeeping entries without cause.

49.     These adverse actions occurred shortly after Plaintiff's protected activity, within the timeframe that gives rise to a presumption of retaliation under D.C. Code § 32-1311. Defendant has failed to provide a legitimate, non-retaliatory justification supported by clear and convincing evidence for its conduct.

50.     The pattern of escalating hostility, selective enforcement of policies, and manufactured performance concerns illustrates Defendant's retaliatory motive and violates both federal and District law.

51.     As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered and continues to suffer substantial harm, including emotional distress, reputational injury, interference with professional advancement, and financial losses. Plaintiff is entitled to all remedies available under law, including compensatory damages, back pay, equitable relief, and attorneys' fees.

**COUNT III**

**Hostile Work Environment Based on Race in Violation of Title VII of the Civil Rights Act of 1964**

**and the District of Columbia Human Rights Act**

52.     Plaintiff re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.

53.     Title VII of the Civil Rights Act of 1964 prohibits employers from subjecting employees to a hostile or abusive work environment on the basis of race. A hostile work environment exists when the conduct is unwelcome, based on race, and sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working atmosphere. The harassment must be both objectively and subjectively hostile.

54.     The District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1402.11, provides an even broader standard than Title VII, prohibiting conduct—verbal or nonverbal, direct or indirect—that unreasonably alters the terms, conditions, or privileges of employment or creates an intimidating, hostile, or offensive work environment based on race. The DCHRA does not require the conduct to be "severe or pervasive" to be actionable and instead mandates an evaluation of the totality of the circumstances, including frequency, duration, severity, and the power dynamics involved.

55.     Plaintiff is a black man who, while employed by Defendant CFPB, was subjected to a sustained campaign of disparate and degrading treatment based on race. This included consistent overburdening with excessive workloads disproportionate to his job classification, repeated assignments to duties beyond the scope of his CN-51 role, exclusion from collaborative

spaces and leadership roles, and regular surveillance and micromanagement that his white colleagues did not endure.

56.     Plaintiff's supervisors knowingly assigned him duties that were substantially more demanding than those given to similarly situated white employees, often duplicative of others' tasks, and offered no meaningful recourse or support when he raised concerns about the racially disparate treatment. These practices were not occasional but persistent, and they were coupled with retaliation, false accusations of performance deficiencies, and the rejection of reasonable internal complaints.

57.     The Regional Director of Plaintiff's division openly acknowledged in a meeting that CN-51 employees—many of whom were black—were being used as "low-cost resources" to absorb the heavier burdens of the workforce, reinforcing the systemic and racialized nature of the environment. Despite this admission, no corrective measures were taken.

58.     The environment cultivated by Defendant was both objectively and subjectively hostile. A reasonable person in Plaintiff's position would find the conduct intimidating, demoralizing, and degrading. Plaintiff himself experienced emotional distress, anxiety, and a breakdown in professional functioning as a result of this sustained harassment and abuse.

59.     Defendant's conduct constitutes a hostile work environment in violation of both Title VII and the DCHRA. Under both legal frameworks, the pattern of treatment experienced by Plaintiff was sufficiently egregious to interfere with his ability to perform his job and altered the conditions of his employment.

60.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer severe emotional distress, loss of professional standing, reputational damage, and economic harm. Plaintiff seeks all legal and equitable relief available under Title VII and the DCHRA, including compensatory damages, injunctive relief, and attorneys' fees.

## COUNT IV

## Disparate Treatment Discrimination Based on Race in Violation of Title VII of the Civil Rights Act of 1964 and the District of Columbia Human Rights Act

61.     Plaintiff re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.

62.     Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment on the basis of race. Similarly, the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1402.11, prohibits such disparate treatment in employment, including assignment of duties, discipline, evaluation, and advancement.

63.     To state a claim for disparate treatment under both Title VII and the DCHRA, Plaintiff must demonstrate that (1) he is a member of a protected class, (2) he was qualified for his position, (3) he suffered an adverse employment action, and (4) similarly situated employees outside his protected class were treated more favorably.

64.     Plaintiff, a black man, is a member of a protected class. He was qualified for his position as a CN-51 Examiner at the Consumer Financial Protection Bureau ("CFPB") and consistently performed his duties with professionalism and competence.

65.     Despite his qualifications, Plaintiff was repeatedly subjected to adverse employment actions, including being disproportionately assigned to high-volume caseloads, tasked with responsibilities outside of his job classification, subjected to heightened scrutiny and excessive oversight, and excluded from collaborative or career-enhancing opportunities. Plaintiff was also issued a written warning containing false allegations and was denied timely and accurate compensation.

66.     Similarly situated white employees at the CN-51 and CN-60 levels were not subjected to the same burdens. For example, white CN-60 employees, although of higher rank, were not required to perform travel-related duties Plaintiff was forced to accept, nor were they

assigned overlapping tasks from multiple managers. White employees were afforded greater flexibility, received leadership assignments, and were shielded from retaliatory scrutiny following workplace complaints.

67.    The differential treatment between Plaintiff and his white colleagues—despite equivalent or greater rank on Plaintiff's part—gives rise to an inference of intentional discrimination based on race. The stated reasons offered by Defendant for these actions were either false, inconsistent, or unsupported by objective evidence, further supporting a finding of pretext.

68.    Defendant's treatment of Plaintiff constitutes unlawful disparate treatment discrimination in violation of both Title VII and the DCHRA.

69.    As a direct and proximate result of this discriminatory treatment, Plaintiff has suffered emotional distress, reputational harm, lost advancement opportunities, and other tangible and intangible damages. Plaintiff seeks all remedies available under law, including compensatory damages, equitable relief, and attorneys' fees.

**COUNT V**

**Failure to Provide Reasonable Accommodation in Violation of the Americans with Disabilities Act and the District of Columbia Human Rights Act**

70.    Plaintiff re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.

71.    Under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and the District of Columbia Human Rights Act (DCHRA), D.C. Code § 2-1402.11, employers are prohibited from discriminating against a qualified individual with a disability by failing to make reasonable accommodations for the known physical or mental limitations of that employee, unless doing so would impose an undue hardship on the operation of the business.

72.    Plaintiff is a qualified individual with a disability as defined under the ADA and DCHRA. As a result of the prolonged and hostile work environment created by Defendant's

conduct, Plaintiff experienced significant emotional distress, including anxiety, panic attacks, and sleep disturbances, all of which substantially limited his ability to engage in major life activities such as concentrating, sleeping, and working. Plaintiff's symptoms were documented and communicated to the agency, and his condition qualifies as a disability under applicable law.

73.     Defendant had actual knowledge of Plaintiff's disability. Plaintiff submitted documentation of his condition and requested reasonable accommodations, including relief from retaliatory work assignments, clearer guidance and expectations, and intervention by Human Resources to address the emotional toll of the work environment.

74.     Plaintiff's requests constituted protected and appropriate efforts to obtain reasonable accommodations that would have allowed him to continue performing the essential functions of his position. These requests did not impose any undue burden on Defendant and were within the scope of available adjustments routinely made for similarly situated employees.

75.     Despite being notified of Plaintiff's condition and his need for accommodation, Defendant failed to engage in the legally required interactive process. Defendant either ignored Plaintiff's requests or delayed responding for extended periods of time. Rather than offer support, Defendant escalated surveillance, retaliatory tasks, and disciplinary actions, thereby constructively denying the accommodation.

76.     Defendant never offered any meaningful or individualized accommodation and failed to acknowledge the impact of its actions on Plaintiff's well-being. The failure to engage in good faith and timely consideration of accommodations constitutes a violation of both the ADA and DCHRA.

77.     At all relevant times, Plaintiff remained qualified for his position and could have performed the essential functions of his job with reasonable accommodation. Defendant's failure to provide such accommodation deprived Plaintiff of equal employment opportunities and further exacerbated the discriminatory and hostile conditions.

78.     As a direct and proximate result of Defendant's failure to accommodate, Plaintiff

suffered and continues to suffer emotional distress, diminished health, lost income, and other

compensable injuries. Plaintiff seeks all legal and equitable relief available under the ADA and

DCHRA, including compensatory damages, injunctive relief, and attorneys' fees.

**COUNT VI**

**Disability Discrimination in Violation of the Americans with Disabilities Act and the District of**

**Columbia Human Rights Act**

79.     Plaintiff re-alleges the foregoing paragraphs of this Complaint as if fully set forth

herein.

80.     The Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and the

District of Columbia Human Rights Act (DCHRA), D.C. Code § 2-1402.11, prohibit employers

from discriminating against qualified individuals on the basis of a physical or mental disability.

These laws protect individuals who (1) have an actual impairment that substantially limits one or

more major life activities, (2) have a record of such an impairment, or (3) are regarded as having

such an impairment.

81.     Plaintiff is a qualified individual with a disability under the ADA and DCHRA.

As a result of prolonged psychological stress caused by workplace discrimination and retaliation,

Plaintiff experienced anxiety, sleep disturbances, and other psychological symptoms that

substantially limited major life activities, including concentrating, working, and resting. Plaintiff

also disclosed this condition to Defendant and submitted supporting medical documentation.

Moreover, even if Plaintiff's condition did not rise to the level of actual disability under the

ADA, Defendant regarded him as impaired and treated him adversely on that basis.

82.     Defendant discriminated against Plaintiff on the basis of his disability by taking

adverse actions against him following his disclosure of his condition and his request for

assistance. These adverse actions included subjecting him to heightened scrutiny, continuing to

assign excessive and retaliatory workloads, excluding him from support structures, and issuing a written warning without basis in fact.

83.     Defendant's conduct was not only devoid of support or empathy for Plaintiff's condition, but affirmatively hostile. Defendant failed to engage in meaningful discussions regarding Plaintiff's limitations or explore adjustments to improve his work environment, and instead intensified its retaliatory behavior. This deliberate indifference and antagonism toward Plaintiff's mental health needs constitute direct discrimination based on disability.

84.     Defendant also discriminated against Plaintiff by fostering a work culture in which disclosure of a disability resulted in stigma, increased surveillance, and formal reprimand. Defendant's actions and omissions had the effect of discouraging the assertion of disability rights and created a workplace atmosphere that marginalized Plaintiff for exercising his right to medical protection and support.

85.     At all relevant times, Plaintiff was qualified for his position and could perform its essential functions, with or without accommodation.

86.     As a direct and proximate result of Defendant's unlawful disability discrimination, Plaintiff has suffered and continues to suffer emotional distress, reputational harm, lost wages, and other economic and non-economic damages. Plaintiff seeks all legal and equitable relief available under the ADA and DCHRA, including compensatory damages, injunctive relief, and attorneys' fees.

## COUNT VII

**Retaliation in Violation of the Americans with Disabilities Act and the District of Columbia Human Rights Act**

87.     Plaintiff re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.

88.     The Americans with Disabilities Act (ADA), 42 U.S.C. § 12203, and the District of Columbia Human Rights Act (DCHRA), D.C. Code § 2-1402.61, prohibit employers from

retaliating against employees for engaging in protected activity, including opposing discrimination based on disability or requesting reasonable accommodations.

89.    Plaintiff engaged in protected activity under the ADA and DCHRA when he notified his supervisors and Human Resources of his mental health condition and requested accommodations to mitigate the impact of a hostile work environment. Plaintiff acted in good faith and believed that he was being subjected to unlawful discrimination and was entitled to relief under applicable law.

90.    Rather than respond to Plaintiff's requests with lawful consideration or support, Defendant took adverse employment actions against him. These included heightened surveillance, increased workload demands, the imposition of duplicative and degrading tasks, exclusion from team support structures, public scrutiny, a formal reprimand, and ultimately the constructive termination of his employment.

91.    The proximity in time between Plaintiff's protected activity and Defendant's adverse actions supports a causal connection. Plaintiff was placed under intensified scrutiny and issued a written warning shortly after submitting medical documentation and requesting disability-related support. Decision-makers responsible for these retaliatory actions had direct knowledge of Plaintiff's protected activity, thereby satisfying the causation requirement under applicable law.

92.    The adverse actions suffered by Plaintiff would dissuade a reasonable employee from asserting their rights under the ADA and DCHRA. Defendant's conduct reflects a clear pattern of retaliation designed to punish Plaintiff for requesting accommodations and raising concerns about discriminatory practices.

93.    Defendant's retaliation violated 42 U.S.C. § 12203 and D.C. Code § 2-1402.61. Additionally, under D.C. Code § 32-1010, the temporal proximity between Plaintiff's protected activity and the adverse actions gives rise to a rebuttable presumption of unlawful retaliation, which Defendant cannot overcome with clear and convincing evidence.

94.     As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered emotional distress, reputational damage, lost income, and other compensable injuries. Plaintiff seeks all legal and equitable relief available under the ADA and DCHRA, including back pay, reinstatement or front pay, compensatory damages, and attorneys' fees.

## COUNT VIII

### Intentional Infliction of Emotional Distress

95.     Plaintiff re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.

96.     Under District of Columbia common law, a claim for Intentional Infliction of Emotional Distress requires proof of: (1) extreme and outrageous conduct by the defendant; (2) that the defendant either intentionally or recklessly caused the plaintiff harm; and (3) that the plaintiff suffered severe emotional distress as a result. See *Jung v. Jung*, 791 A.2d 46; *Jonathan Woodner Co. v. Breeden*, 665 A.2d 929; *Joyner v. Sibley Mem. Hosp.*, 826 A.2d 362.

97.     Defendant's conduct in this case was extreme, persistent, and deliberately targeted. Plaintiff, an African American employee with a documented mental health condition, was subjected to a calculated pattern of disparate treatment, including but not limited to excessive workloads, forced travel under stressful and isolated conditions, denial of accommodations, retaliatory discipline, exclusion from collaborative support structures, and micromanagement intended to humiliate and degrade. These actions were taken by supervisors with actual knowledge of Plaintiff's disability, his race, and his protected activity, and were designed to pressure him into resignation or emotional collapse.

98.     Defendant's Regional Director acknowledged internally that CN-51 employees—who were disproportionately Black—were being used as "low-cost resources," yet Defendant took no corrective action and continued to exploit and mistreat Plaintiff. When Plaintiff sought relief and submitted documentation supporting his need for accommodation due to his deteriorating mental health, Defendant escalated its retaliatory conduct rather than offer

assistance. Plaintiff was reprimanded, isolated, and driven to emotional exhaustion without justification.

99.    This course of conduct far exceeds the bounds of workplace indignities or managerial discretion. The sustained, targeted campaign against Plaintiff was so extreme and outrageous as to be utterly intolerable in a civilized society. It was not the product of negligent oversight but of intentional or reckless disregard for Plaintiff's emotional and psychological well-being.

100.    As a direct result of Defendant's conduct, Plaintiff suffered severe emotional distress, including anxiety, insomnia, inability to concentrate, and other symptoms interfering with his daily life. These symptoms were so acute that they required medical attention and significantly impacted his personal and professional functioning.

101.    Defendant knew or should have known that such conduct would cause serious emotional harm, and its actions were either intentional or in reckless disregard of Plaintiff's health.

102.    Accordingly, Plaintiff is entitled to recover damages for the severe emotional distress he suffered, including compensatory damages, consequential damages, and all other relief this Court deems just and proper.

## COUNT IX

**Violation of Collective Bargaining Agreement (CBA) and Retaliatory Misassignment**

103.    Plaintiff re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.

104.    At all relevant times, Plaintiff was employed by the Consumer Financial Protection Bureau (CFPB) and was a bargaining unit employee covered under a valid and enforceable Collective Bargaining Agreement ("CBA") entered into between the CFPB and the bargaining representative of its employees.

105.     The CBA provides specific terms and protections regarding job classification, workload distribution, travel assignments, retaliation protections, and the resolution of grievances through a structured process.

106.     Defendant, through its managers and supervisors, knowingly and repeatedly violated the terms of the CBA by misclassifying Plaintiff's work assignments, directing him to perform tasks outside the scope of his CN-51 classification, and by failing to equitably distribute workload as required by the agreement. Plaintiff was routinely assigned higher volumes of complex caseloads and travel responsibilities than his similarly situated peers—particularly white employees—who were classified at the CN-60 level and above.

107.     Plaintiff's repeated efforts to seek relief under the CBA, including internal complaints to management, Human Resources, and engagement with the grievance process, were met not with corrective action but with retaliatory measures. These included increased scrutiny, false performance narratives, exclusion from support resources, and continued misassignment in violation of the protections afforded by the CBA.

108.     Plaintiff's treatment constitutes both a material breach of the CBA and a pattern of retaliation in violation of applicable District of Columbia labor law. D.C. Code § 1-617.13 authorizes equitable relief, including reinstatement of proper classification, back pay, and correction of adverse assignments where it is shown that the employer's actions contravened the collective agreement and had adverse economic effects on the employee.

109.     Additionally, under D.C. Code § 32-1311, Plaintiff is entitled to relief for the retaliatory nature of the adverse assignments and managerial conduct that followed his protected complaints. These actions were not only inconsistent with the CBA but were also taken with knowledge of Plaintiff's attempts to exercise rights protected by the agreement and anti-retaliation laws.

110.     While Plaintiff is aware that some CBA-related claims may be preempted by Section 301 of the National Labor Relations Act where resolution would require interpretation of

contract terms, the claims asserted herein are grounded in the Defendant's overt disregard of clear and unambiguous CBA provisions and its retaliatory conduct, which falls outside the scope of mere interpretation and instead reflects intentional misconduct.

111.    As a direct and proximate result of Defendant's violations, Plaintiff has suffered financial harm, loss of employment benefits, reputational injury, and severe emotional distress. Plaintiff seeks all available remedies including but not limited to damages, equitable relief, reinstatement of proper job classification, expungement of false records, and attorneys' fees.

## COUNT X

### Violation of the D.C. Whistleblower Protection Act

112.    Plaintiff re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.

113.    The District of Columbia Whistleblower Protection Act ("WPA"), D.C. Code § 1-615.51 et seq., prohibits supervisors and public employers from taking or threatening to take prohibited personnel actions against employees who make protected disclosures or refuse to comply with illegal orders.

114.    Under the WPA, a "protected disclosure" includes any communication that an employee reasonably believes evidences gross mismanagement, abuse of authority, substantial and specific dangers to public health or safety, violations of law, or the gross misuse of public funds or resources. A "prohibited personnel action" includes any retaliatory conduct such as demotion, suspension, reprimand, reassignment, or other adverse treatment in the terms and conditions of employment. D.C. Code § 1-615.52(a)(5)–(6).

115.    Plaintiff, a CN-51 Examiner employed by Defendant CFPB, made multiple protected disclosures to his immediate supervisors, Human Resources, and the Equal Employment Opportunity (EEO) office beginning in or around early 2023 and continuing thereafter. These disclosures concerned, among other things, racially disparate workloads, classification violations, abuse of CN-51 employees as "low-cost resources," assignment of

duties outside Plaintiff's job description, and management's failure to rectify known systemic inequities affecting predominantly black employees.

116.    Plaintiff also reported being required to travel and perform duties inconsistent with his position classification, and he raised concerns regarding the retaliatory pattern of scrutiny, duplication of duties, surveillance, and denial of standard supports after raising such complaints—constituting a pattern of abuse of authority and mismanagement within the CFPB.

117.    Defendant, through its supervisors and agents, had actual knowledge of Plaintiff's disclosures. Supervisors including the Regional Director explicitly acknowledged during internal meetings the pattern of CN-51 exploitation. Instead of taking corrective action, CFPB escalated its retaliatory campaign against Plaintiff.

118.    Following Plaintiff's protected disclosures, Defendant subjected him to a series of prohibited personnel actions, including but not limited to: arbitrary reassignment of cases, excessive caseloads beyond his classification level, false written counseling memos, denial of overtime support, intimidation, exclusion from team leadership roles, and repeated efforts to force Plaintiff to assume duties of higher-classified employees (CN-60) without compensation or authority.

119.    These retaliatory actions followed shortly after each of Plaintiff's protected complaints, establishing a temporal nexus between the disclosures and the adverse treatment. Under D.C. Code § 1-615.54(b), Plaintiff need only demonstrate that his disclosures were a contributing factor in the adverse treatment. Defendant cannot meet its burden to show, by clear and convincing evidence, that the adverse actions would have occurred independently of Plaintiff's protected activity.

120.    As a direct and proximate result of Defendant's violation of the D.C. WPA, Plaintiff has suffered lost income, diminished professional reputation, emotional distress, and other compensable injuries. Plaintiff is entitled to all remedies available under D.C. Code §

1-615.54, including compensatory damages, equitable relief, reinstatement to a position free from retaliatory conditions, and an award of attorney's fees and costs.

## COUNT XI

## Violation of the Uniformed Services Employment and Reemployment Rights Act

## (USERRA)

121.    Plaintiff Thaddeaus Sims is a 10-point Preference Disabled Veteran with recognized service-connected disabilities. As a federal employee at the Consumer Financial Protection Bureau (CFPB) since 2014, Mr. Sims is entitled to the protections afforded under the Uniformed Services Employment and Reemployment Rights Act (USERRA), codified at 38 U.S.C. § 4301 et seq., which prohibits discrimination and retaliation against individuals based on their military service or veteran status.

122.    Under USERRA, it is unlawful for an employer to deny any benefit of employment or to take adverse action against an employee if their past, present, or future military service is a substantial or motivating factor in such decisions. The statute also protects employees who report suspected violations or participate in investigations related to USERRA from retaliation.

123.    In the course of his employment, Mr. Sims was subjected to disparate treatment, including disproportionate and burdensome workload assignments, exclusion from opportunities for advancement, and heightened scrutiny by management. These adverse actions were inconsistent with the treatment of similarly situated non-veteran employees and were motivated, in whole or in part, by Mr. Sims's status as a disabled veteran.

124.    Further, after Mr. Sims engaged in protected activity—including internal complaints regarding inequitable workload distribution and the initiation of an investigation with the U.S. Office of Special Counsel (OSC)—he was subjected to retaliatory actions. These included, but were not limited to, a fraudulent performance evaluation issued on July 16, 2025, which mischaracterized his performance as merely "progressing towards standards," despite a well-documented history of high-quality work. After OSC opened an investigation on July 18, 2025, the agency quickly reversed the evaluation and elevated his rating to "surpassed standards," confirming the retaliatory nature of the original rating.

125.    Such conduct constitutes unlawful discrimination and retaliation in violation of USERRA, specifically 38 U.S.C. § 4311, which prohibits adverse employment actions motivated by an employee's military service or related activities, including initiating or participating in investigations. Mr. Sims's protected veteran status and participation in the OSC investigation were substantial motivating factors in the adverse employment decisions taken against him by CFPB.

126.    As a direct and proximate result of Defendant's violation of USERRA, Plaintiff has suffered harm including reputational injury, emotional distress, lost career advancement opportunities, and ongoing anxiety and humiliation. Plaintiff seeks all available remedies under the statute, including declaratory and injunctive relief, reinstatement of lost employment benefits, back pay, front pay, attorneys' fees, and all other damages deemed just and proper by the Court.

## COUNT XII

## Violation of the Veterans' Preference Act, 5 U.S.C. § 2108 and Related OPM Regulations

127.    Plaintiff Thaddeaus Sims is a 10-point Preference Disabled Veteran, having sustained service-connected disabilities recognized by the United States government. As such, Mr. Sims is a "preference eligible" individual under 5 U.S.C. § 2108(3), and is entitled to the full protections and benefits afforded to veterans in federal employment, including preferential treatment in hiring, retention, and protection from adverse actions.

128.    Under the Veterans' Preference Act of 1944, as codified in 5 U.S.C. § 2108 and implemented through related Office of Personnel Management (OPM) regulations, including 5 C.F.R. § 211.102, preference eligible veterans must receive priority consideration in personnel decisions, including promotions, assignments, and any adverse employment actions such as disciplinary measures, demotions, or changes in job status. These protections are reinforced by 5

U.S.C. § 7512, which requires that certain procedural safeguards be followed before any adverse action is taken against a preference eligible employee.

129.    Despite these legal protections, Mr. Sims was subjected to adverse employment actions by the Consumer Financial Protection Bureau (CFPB) without adherence to the procedural and substantive protections owed to him as a preference eligible veteran. These actions included the imposition of discriminatory and excessive workloads, pretextual and retaliatory performance evaluations, exclusion from advancement opportunities, and retaliatory conduct following protected disclosures. The Bureau failed to honor its obligations under the Veterans' Preference Act by disregarding Mr. Sims's preference status in its employment decisions and failing to apply the appropriate standards and protections applicable to his classification.

130.    Additionally, the CFPB failed to provide Mr. Sims with the procedural due process required under 5 U.S.C. § 7512 before taking materially adverse actions. This includes the issuance of a formal counseling memo containing baseless allegations, a negative performance review later contradicted and revised following the opening of an investigation by the Office of Special Counsel (OSC), and continuous targeting of Mr. Sims after he raised internal complaints related to discriminatory workload distribution and retaliation.

131.    These actions collectively constitute a violation of the Veterans' Preference Act and its implementing regulations, as well as a broader failure by CFPB to protect and uphold the employment rights of disabled veterans as mandated by federal law. Mr. Sims's veteran status and resulting eligibility for employment protections were not merely disregarded, but affirmatively undermined by the Bureau's failure to apply the correct standards and safeguards.

132.    As a result of Defendant's violations, Mr. Sims has suffered substantial harm, including reputational damage, emotional distress, lost professional opportunities, and an erosion of the federal protections designed to safeguard preference eligible veterans. Plaintiff seeks all available remedies, including declaratory and injunctive relief, back pay, compensatory

damages, front pay, and attorneys' fees, as well as any further relief deemed just and proper by this Court.

## COUNT XIII

### Violation of the Rehabilitation Act of 1973 (29 U.S.C. § 701 et seq.)

133.    Plaintiff Thaddeaus Sims is a 10-point Preference Disabled Veteran and qualified individual with a disability within the meaning of the Rehabilitation Act of 1973. As an employee of a federal agency receiving federal financial assistance, Mr. Sims is entitled to protection under Section 504 of the Act, which prohibits discrimination on the basis of disability in any program or activity conducted by the federal government, including employment at the Consumer Financial Protection Bureau ("CFPB").

134.    Despite his protected status, Mr. Sims was subjected to disparate treatment, retaliation, and denial of reasonable accommodations in violation of the Rehabilitation Act. After notifying CFPB management and Human Resources of his work-related anxiety and symptoms of emotional distress—directly resulting from the discriminatory workload assignments, hostile supervision, and ongoing retaliation—Mr. Sims requested reasonable accommodations, including reassignment and workload modification. Rather than engaging in the interactive process required by law, CFPB managers intensified their scrutiny, increased his workload, and permitted the continuation of retaliatory conduct.

135.    The agency's failure to provide reasonable accommodations, coupled with its refusal to alleviate a hostile work environment that exacerbated Mr. Sims's disability, constitutes a violation of the Rehabilitation Act. Further, Mr. Sims was retaliated against for asserting his rights under the Act, including his requests for accommodations and his participation in protected activity, such as filing internal complaints and raising issues with the EEO and the Office of Special Counsel.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Thaddeaus Sims respectfully requests that this Court grant the following relief:

A.   A declaratory judgment that:

a.   Defendant's conduct—including but not limited to race discrimination, disability discrimination, retaliation, failure to accommodate, creation of a hostile work environment, and violations of the collective bargaining agreement—constitutes violations of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), and the District of Columbia Human Rights Act (DCHRA);

b.   Defendant's retaliatory actions against Plaintiff following his protected disclosures and participation in EEO activity violate the anti-retaliation provisions of Title VII, the ADA, the DCHRA, and the D.C. Whistleblower Protection Act (WPA);

c.   Defendant's failure to provide reasonable accommodations and its ongoing disparate treatment of Plaintiff based on his known medical condition violate the ADA and corresponding D.C. disability rights statutes;

d.   Defendant's conduct—through repeated misassignment, excessive scrutiny, denial of advancement, and sustained targeting of Plaintiff after engaging in protected activity—constitutes a pattern of intentional infliction of emotional distress under D.C. common law;

e.   Defendant's misassignment of duties, denial of contractual rights, and refusal to address workplace inequities constitute violations of applicable provisions of the Collective Bargaining Agreement and governing labor law;

B.   An injunction against Defendant, enjoining it from further engaging in unlawful discrimination, harassment, retaliation, and failure to accommodate, and requiring that it implement and enforce effective anti-discrimination, disability accommodation, and

whistleblower protection policies, including appropriate training for all managers, supervisors, and Human Resources personnel;

C.    An award of compensatory damages in an amount to be determined at trial for Plaintiff's emotional distress, mental anguish, reputational harm, pain and suffering, and loss of dignity and enjoyment of life resulting from Defendant's unlawful conduct;

D.    An award of back pay and lost employment benefits, including denied merit pay, withheld performance-based awards, and other forms of compensation denied as a result of discriminatory and retaliatory conduct;

E.    An award of front pay or equitable reinstatement of Plaintiff's full duties, privileges, and access to leadership opportunities as deemed appropriate by the Court;

F.    An award of punitive damages sufficient to punish Defendant for its willful, malicious, and reckless disregard for Plaintiff's rights and to deter future unlawful behavior;

G.    An award of attorneys' fees, expert witness fees, costs, and expenses incurred in bringing this action, as authorized by Title VII, the ADA, the DCHRA, the D.C. WPA, and other applicable law;

H.    Such other and further relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: August 26, 2025

/s/ John L. Pittman III
John L. Pittman III, Esq., LLM2
Texas State Bar No. 24127922
New York State Bar No. 5880646
California State Bar No. PL482988
District of Columbia Bar No. 1742578
**JOHN L. PITTMAN III | ATTORNEY AT LAW, APC**
925 B Street, Suite 604

San Diego, CA 92101
Main Office: 833-575-4040 - Email: info@jp3law.com
Direct Office: 760-575-4040 - Fax: 877-575-5264
jlpittmaniii@jp3law.com
***COUNSEL FOR PLAINTIFF
THADDEAUS SIMS***

# Superior Court of the District of Columbia

### CIVIL DIVISION - CIVIL ACTIONS BRANCH

### INFORMATION SHEET

2025-CAB-005923

_____    Case Number: _____
Plaintiff(s)

vs                                    Date: _____

_____    One of the defendants is being sued
Defendant(s)                          in their official capacity.

| Name: *(Please Print)* | Relationship to Lawsuit |
|---|---|
| | Attorney for Plaintiff |
| Firm Name: | Self (Pro Se) |
| Telephone No.:          DC Bar No.: | Other: _____ |

TYPE OF CASE:        Non-Jury            6 Person Jury              12 Person Jury
Demand: $_____        Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED
Case No.:_____        Judge: _____        Calendar #:_____

Case No.:_____        Judge: _____        Calendar #:_____

| NATURE OF SUIT:      *(Check One Box Only)* | | |
|---|---|---|
| **CONTRACT** | **COLLECTION/INS. SUB** | **EMPLOYMENT DISPUTE** |
| Breach of Contract | Debt Collection | Breach of Contract |
| Breach of Warranty | Insurance Subrogation | Discrimination |
| Condo/Homeowner Assn. Fees | Motion/Application for Judgment by Confession | Wage Claim |
| Contract Enforcement | Motion/Application Regarding Arbitration Award | Whistle Blower |
| Negotiable Instrument | | Wrongful Termination |

| **REAL PROPERTY** | | | **FRIENDLY SUIT** |
|---|---|---|---|
| Condo/Homeowner Assn. Foreclosure | Ejectment | Other | **HOUSING CODE REGULATIONS** |
| Declaratory Judgment | Eminent Domain | Quiet Title | **QUI TAM** |
| Drug Related Nuisance Abatement | Interpleader | Specific Performance | **STRUCTURED SETTLEMENTS** |

| **ADMINISTRATIVE PROCEEDINGS** | | **AGENCY APPEAL** |
|---|---|---|
| Administrative Search Warrant | Release Mechanics Lien | Dangerous Animal Determination |
| App. for Entry of Jgt. Defaulted Compensation Benefits | Request for Subpoena | DCPS Residency Appeal |
| Enter Administrative Order as Judgment | **MALPRACTICE** | Merit Personnel Act (OEA) |
| Libel of Information | Medical – Other | Merit Personnel Act (OHR) |
| Master Meter | Wrongful Death | Other Agency Appeal |
| Petition Other | **APPLICATION FOR INTERNATIONAL FOREIGN JUDGMENT** | |

CV-496/February 2023

# Information Sheet, Continued

**CIVIL ASSET FORFEITURE**

    Currency

    Other

    Real Property

    Vehicle

**NAME CHANGE/VITAL RECORD AMENDMENT**

    Birth Certificate Amendment

    Death Certificate Amendment

    Gender Amendment

    Name Change

**TORT**

    Abuse of Process

    Assault/Battery

    Conversion

    False Arrest/Malicious Prosecution

    Libel/Slander/Defamation

    Personal Injury

    Toxic Mass

    Wrongful Death (Non-Medical Malpractice)

**GENERAL CIVIL**

    Accounting

    Deceit (Misrepresentation)

    Fraud

    Invasion of Privacy

    Lead Paint

    Legal Malpractice

    Motion/Application Regarding Arbitration Award

    Other - General Civil

    Product Liability

    Request for Liquidation

    Writ of Replevin

    Wrongful Eviction

**CIVIL I/COMPLEX CIVIL**

    Asbestos

**MORTGAGE FORECLOSURE**

    Non-Residential

    Residential

**STATUTORY CLAIM**

    Anti – SLAPP

    Consumer Protection Act

    Exploitation of Vulnerable Adult

    Freedom of Information Act (FOIA)

    Other

**TAX SALE FORECLOSURE**

    Tax Sale Annual

    Tax Sale Bid Off

**VEHICLE**

    Personal Injury

    Property Damage

**TRAFFIC ADJUDICATION APPEAL**

**REQUEST FOR FOREIGN JUDGMENT**

_____     _____
Filer/Attorney's Signature                               Date

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Thaddeaus Sims
_____
                                    Plaintiff
                  vs.

Case Number    2025-CAB-005923

Consumer Financial Protection Bureau
_____
                                    Defendant

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

John L. Pittman III
_____
Name of Plaintiff's Attorney

925 B Street, Suite 604 - San Diego, CA 9210
_____
Address
Fax: 877-575-5264
_____

Direct: (760) 575 - 4040
_____
Telephone

_Clerk of the Court_

By _____
                              Deputy Clerk

Date          September 5, 2025
_____

如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시요.          የአማርኛ ትርጉም ለማግኘት (202) 879-4828  ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                          Super. Ct. Civ. R. 4



**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

THADDEAUS SIMS

Demandante

contra

CONSUMER FINANCIAL PROTECTION BUREAU

Demandado

Número de Caso: __2025-CAB-005953__

**CITATORIO**

Al susodicho Demandado:

 Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

 A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

John L. Pittman III
_____
Nombre del abogado del Demandante

*SECRETARIO DEL TRIBUNAL*

925 B Street, Suite 604 - San Diego, CA 92101
_____
Dirección

Fax: 877-575-5264
_____

Por: _____

Direct: (760) 575 - 4040
_____
Teléfono

Fecha _____9/5/2025_____

如需翻译,请打电话 (202) 879-4828  Veuillez appeler au (202) 879-4828 pour une traduction  Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202) 879-4828 로 전화하십시오  የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

 IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO_.

 Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original
