**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THADDEAUS SIMS,<br><br>Plaintiff,<br><br>v.<br><br>CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Defendant. | Civil Action No. 25-3769 (CKK) |

**MEMORANDUM OPINION**
(September 18, 2026)

Plaintiff Thaddeaus Sims moves under Federal Rule of Civil Procedure 60(b) to set aside the Court's order granting Defendant's motion to dismiss his claims as conceded. Upon consideration of the parties' submissions,[1] the relevant legal authority, and the entire record, the Court shall **DENY** Sims's [11] Motion to Set Aside Judgment.

## I. BACKGROUND

On September 4, 2025, Plaintiff Thaddeaus Sims ("Sims") filed a complaint against his employer, the Consumer Financial Protection Bureau ("CFPB"), in the Superior Court of the District of Columbia. *See* Dkt. No. 1-2. Sims alleged that he was discriminated against with respect to his race, disability, and veteran status, and was subjected to retaliation for engaging in protected activity regarding this alleged discrimination. *See id.*

On October 24, 2025, the CFPB, as "an agency of the United States," removed Sims's action to this Court under 28 U.S.C. § 1442(a)(1). Dkt. No. 1. On October 28, the CFPB moved

[1] The Court's consideration has focused on Defendants' Motion to Dismiss, Dkt. No. 9; Plaintiff's Motion to Set Aside Judgment, Dkt. No. 11; Plaintiff's Proposed Opposition, Dkt. No. 11-1; Defendant's Opposition to Plaintiff's Motion to Set Aside Judgment, Dkt. No. 13; and Plaintiff's Reply in Support of his Motion to Set Aside Judgment, Dkt. No. 14.

for a stay on the basis that Sims had not yet effectuated proper service of process. Dkt. No. 4. Sims opposed the CFPB's motion, arguing that the CFPB "removed the matter the same day [that Sims] filed [a] First Amended Complaint—thereby disrupting the state-court service process and the opportunity to issue a new summons from that court." Dkt. No. 6 at 2. The CFPB then filed a reply. Dkt. No. 8. In its reply, the CFPB informed the Court that the Superior Court docket did not contain the First Amended Complaint that Sims allegedly filed, and that the Superior Court Clerk's Office confirmed that the docket "reflect[ed] all case filings and there [was] no pending amended complaint." *Id.* at 2 n. 1.[2] The CFPB also clarified that it only sought a stay until Sims effectuated service in accordance with Federal Rule of Civil Procedure 4(i). *Id.* at 2.

On November 21, 2025, the CFPB moved to dismiss Sims's complaint for lack of jurisdiction. Dkt. No. 9. The CFPB argued that this Court did not have jurisdiction under the derivative jurisdiction doctrine because the Superior Court lacked jurisdiction over Sims's claims in the first instance. *See id.* Under the default rules of this Court, Sims was required to respond to the CFPB's motion to dismiss by no later than December 5, 2025. LCvR 7(b); Fed. R. Civ. P. 6(d). He did not so do. Eleven days passed after Sims's deadline without a filing from Sims. Accordingly, on December 16, 2025, the Court granted the CFPB's motion to dismiss as conceded and dismissed Sims's complaint. Dkt. No. 10 (quoting LCvR 7(b)) ("The Court shall therefore 'treat [Defendant's] motion as conceded' and dismiss the case.").

That same day, Sims moved to set aside the Court's order granting the CFPB's motion to dismiss. *See* Pl.'s Mot., Dkt. No. 11. Sims argued that the Court should set aside its order under Federal Rule of Civil Procedure 60(b) due to "excusable neglect" on the part of his counsel and to prevent a "manifestly unjust result." *Id.* at 5–6. According to Sims, his failure to respond was

[2] The lack of an amended complaint was confirmed in the Superior Court's transmission of a certified copy of the docket. Dkt. No. 7.

"the consequence of a documented, third-party technical communications disruption affecting counsel's receipt of email/e-service communications during the relevant period." *Id.* at 3; *see also id.* (where Sims adds that "[t]his case was also in a procedurally unusual posture"). Sims's motion to set aside the Court's order also included an attachment containing his proposed opposition to the CFPB's motion to dismiss. *See* Pl.'s Proposed Opp'n, Dkt. No. 11-1.

The CFPB opposed Sims's motion to set aside the Court's order. *See* Def.'s Opp'n, Dkt. No. 13. The CFPB argues that Sims's motion "is meritless twice over: first, because [Sims] cannot demonstrate entitlement to relief under Rule 60(b), and second, because relitigating the [CFPB's] motion for dismissal without prejudice would not change its result." *Id.* at 1. Sims filed a reply, *see* Pl.'s Reply, Dkt. No. 14, and the matter is now ripe.

## II. LEGAL STANDARD

"Rule 60(b) allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances." *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005). Relevant here are circumstances involving "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), or where "any other reason . . . justifies relief," *id.* at 60(b)(6). "The party seeking relief from judgment bears the burden of proof." *Norris v. Salazar*, 277 F.R.D. 22, 25 (D.D.C. 2011) (BAH).

## III. ANALYSIS

The CFPB argues that Sims's motion "is meritless twice over: first, because [Sims] cannot demonstrate entitlement to relief under Rule 60(b), and second, because relitigating the [CFPB's] motion for dismissal without prejudice would not change its result." Def.'s Opp'n, Dkt. No. 13 at 1. The Court shall address each of these arguments in turn. Upon doing so, the Court concludes that Sims has not demonstrated entitlement to relief for "excusable neglect" under Rule 60(b)(1),

nor has he demonstrated that relitigating the CFPB's motion for dismissal without prejudice would change its result. Accordingly, the Court shall **DENY** Sims's [11] Motion to Set Aside Judgment.

### A. Sims has not shown that he is entitled to relief for "excusable neglect" under Rule 60(b)(1).

Rule 60(b)(1) states that a court may relieve a party from a final judgment for "excusable neglect." Fed.R.Civ.P. 60(b)(1). The determination of "excusable neglect" is "an equitable matter that requires consideration of, *inter alia*, the risk of prejudice to the non-movant, the length of delay, the reason for the delay, including whether it was in control of the movant, and whether the movant acted in good faith." *Norris*, 277 F.R.D. at 25. "Negligence, or even gross negligence, on the part of counsel does not constitute the 'excusable neglect' warranting relief under this section of the rule." *Id.* "Counsel typically must have some reasonable basis for not meeting a filing deadline to show excusable neglect." *Morrissey v. Mayorkas*, 17 F.4th 1150, 1162 (D.C. Cir. 2021) (citation modified).

Sims has not shown excusable neglect. His primary argument is that his failure to oppose the CFPB's motion to dismiss "was driven by a verified third-party communications disruption that prevented reliable receipt of incoming email and certain e-service communications for approximately three to four weeks, including the relevant deadline window, and only later began to resolve as delayed messages 'trickled in.'" Pl.'s Mot. at 5–6. This explanation falls short of justifying the relief sought. "In this Circuit, the law is clear: regardless of whether or not attorneys receive electronic notice, they remain 'obligated to monitor the court's docket.'" *Lutsenko v. Pshnka*, 282 F.R.D. 5, 8 (D.D.C. 2012) (CKK) (quoting *Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1294 (D.C. Cir. 2004)). Sims does not argue that the alleged "communications disruption" interfered with his counsel's ability to monitor the Court's docket. "As a result, even if the Court

were inclined to credit [Sims's] explanation, it does not provide a basis to overlook his counsel's failure to monitor the docket." *Id.* (collecting cases).

Moreover, the material submitted by Sims in support of his motion cuts against excusing his attorney's neglect in monitoring the Court's docket. Sims filed a Notice along with his motion for reconsideration. *See* Dkt. No. 11-6 (titled, "Notice of Recent Technical Communication Failure Affecting Receipt of Email, Fax, and Electronic Service"). This Notice contains the wrong case caption[3] and indicates that it was filed on December 5, 2025.[4] *See id.* Upon checking the docket for the erroneously captioned case, it appears that an identical Notice was indeed filed in the Southern District of Texas on December 5, 2025, which happened to be the deadline for Sims to file a response in this matter. *See Ford v. Pangea International Trading Co., et al.*, No. 25-cv-916, Dkt. No. 26 (S.D. Tex.). Counsel for Sims therefore knew of the alleged technical issue before Sims's deadline to respond to the CFPB had passed. *See also* Dkt. No. 11-8 at 4 (December 3, 2025, email where Sims's counsel appears to discuss running tests on his email system). But instead of filing a similar notice with this Court on December 5, counsel for Sims decided to wait an additional eleven days for the Court to grant the CFPB's motion as conceded before filing not only a similar notice, but the *same exact notice*. This cuts against relief here, as "[n]egligence, or even gross negligence, on the part of counsel does not constitute the 'excusable neglect' warranting relief under this section of the rule." *Norris*, 277 F.R.D. at 25.

Sims's subsidiary arguments fare no better. Sims suggests that the parties' dispute over whether Sims had properly effectuated service supports granting equitable relief. Pl.'s Mot. at 7.

---

[3] The case caption is for the case *Ford v. Pangea International Trading Co., et al.*, No. 25-cv-916 (S.D. Tex.).

[4] The Notice also contains a certification from Sims's attorney that "certify[ies] that on April 9, 2025, a true and correct copy of the foregoing was served on all counsels of record" in the above-mentioned case in the Southern District of Texas. Dkt. No. 11-6 at 6.

But he offers no legal support for this theory, and common sense would suggest otherwise: the Court did not rule on the service dispute until it granted the CFPB's motion to dismiss as conceded, which means that, at all relevant times, Sims's counsel declined to monitor the docket in this matter despite knowing that his firm underwent an alleged "communications blackout," *id.*, and knowing that his client had a live issue in front of this Court. These circumstances do not support equitable relief. Nor can Sims rely on the catch-all provision found in Rule 60(b)(6). The Supreme Court has "repeatedly held that relief under Rule 60(b)(6) is available only when Rules 60(b)(1) through (b)(5) are inapplicable." *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 211 (2025) (cleaned up). As the Court just detailed, and as Sims concedes, Rule 60(b)(1) is applicable here, so Rule 60(b)(6) does not apply.

**B. Sims has not demonstrated that relitigating the CFPB's motion for dismissal without prejudice would change its result.**

"It has long been established that as a precondition to relief under Rule 60(b), the movant must provide the district court with reason to believe that vacating the judgment will not be an empty exercise or a futile gesture." *Murray v. D.C.*, 52 F.3d 353, 355 (D.C. Cir. 1995). "Although the proffered claim or defense need not be ironclad,' a Rule 60(b) movant 'must at least establish that it possesses a potentially meritorious claim or defense which, if proven, will bring success in its wake.'" *Id.* (quoting *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Loc. No. 59 v. Superline Transp. Co.*, 953 F.2d 17, 21 (1st Cir. 1992)). "Consequently, even if lack of notice of a dispositive motion warrants granting reconsideration, [a movant] must still proffer . . . a potentially meritorious claim or defense in order to provide the district court with a basis for concluding that granting reconsideration will not be a useless gesture." *Id.*

The CFPB moved to dismiss Sims's action for lack of jurisdiction under the doctrine of derivative jurisdiction. *See* Dkt. No. 9. "The derivative-jurisdiction doctrine arises from the theory

that a federal court's jurisdiction over a removed case derives from the jurisdiction of the state court from which the case originated." *McCain v. Soc. Sec. Admin.*, No. 23-cv-3288 (CKK), 2023 WL 9023171, at *1 (D.D.C. Dec. 29, 2023) (quoting *Palmer v. City Nat'l Bank of W. Va.*, 498 F.3d 236, 244 (4th Cir. 2007)). "The term 'State court' includes the Superior Court of the District of Columbia." 28 U.S.C. § 1442(d)(6). As the Supreme Court instructs,

> The jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction. If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction.

*Lambert Run Coal Co. v. Baltimore & O.R. Co.*, 258 U.S. 377, 382 (1922). Accordingly, the Court's "threshold determination is whether, prior to removal, the Superior Court . . . had jurisdiction of the subject matter" of Sims's suit. *McCain*, 2023 WL 9023171, at *1 (quoting *McKoy-Shields v. First Washington Realty, Inc.*, No. 11-cv-01419 (RLW), 2012 WL 1076195, at *2 (D.D.C. Mar. 30, 2012)). And "[a]lthough Congress has chosen to abrogate the derivative jurisdiction doctrine for removals effectuated under 28 U.S.C § 1441, application of the derivative jurisdiction doctrine remains valid where, like here, cases are removed under 28 U.S.C § 1442." *McKoy-Shields*, 2012 WL 1076195, at *2.

Sims's proposed opposition appears to concede that the derivative jurisdiction doctrine applies to his claims. *See* Dkt. No. 11-1 ¶ 22 (arguing that "[o]nce the case was removed, Plaintiff's claims fell squarely within the forum Congress designated for their adjudication"). And rightfully so. Sims does not present any argument to suggest that the Superior Court had jurisdiction over his federal claims brought under Title VII of the Civil Rights Act of 1964, *see Day v. Azar*, 308 F. Supp. 3d 140, 145 (D.D.C. 2018) (holding that, because "the Superior Court of the District of Columbia lacked jurisdiction over [plaintiff's] Title VII claims," the court "[could not] derive removal jurisdiction over these claims under 28 U.S.C. § 1442(a)(1)"); the Americans

with Disabilities Act, *see Edwards v. United States*, No. 18-cv-2560 (KBJ), 2020 WL 2800605, at *7 (D.D.C. May 29, 2020) (". . . the ADA does not apply to the federal government."); the Rehabilitation Act of 1973, *see Andrews v. Mayorkas,* No. 18-cv-315 (EGS), 2022 WL 19297053, at *7 (D.D.C. Mar. 28, 2022) (explaining that "[t]he Rehabilitation Act adopts the jurisdictional and procedural provisions of Title VII," which does not create a waiver of the United States' sovereign immunity in Superior Court"); the Veterans' Preference Act, *see Rowland v. Walker*, 245 F. Supp. 2d 136, 138 n. 1 (D.D.C. 2003) (". . . there is no private right of action under the Veterans Preference Act."), *aff'd*, No. 03-5082, 2003 WL 21803321 (D.C. Cir. July 31, 2003); or the Uniform Services Employment and Reemployment Rights Act, *see Jolley v. United States*, No. 21-cv-2709 (TSC), 2023 WL 3619415, at *5 (D.D.C. May 24, 2023) (explaining that the relevant "administrative scheme does not provide for USERRA claims to be litigated before district courts").

Nor does Sims present any argument to suggest that the Superior Court had jurisdiction over his state-law claims brought under the D.C. Human Rights Act, *see Burford v. Yellen*, 246 F. Supp. 3d 161, 181 (D.D.C. 2017) (RMC) (explaining that "sovereign immunity bars DCHRA claims against the federal government") (citation modified); the D.C. Whistleblower Protection Act, *see Coulibaly v. Kerry*, 213 F. Supp. 3d 93, 159 (D.D.C. 2016) ("The District of Columbia Whistleblower Protection Act thus applies only to District of Columbia government employees and to District of Columbia government employers."); the D.C. labor laws, *see Greenhill v. Spellings*, 482 F.3d 569, 572 (D.C. Cir. 2007) (explaining that the Court of Federal Claims has "exclusive" jurisdiction over contract-based claims against the federal government "when a plaintiff seeks more than $10,000 in damages," as Sims does here); or the D.C. common law, *see McCain*, 2023 WL 9023171, at *1–2 (explaining that the FTCA vests the federal district courts

with "exclusive jurisdiction" over civil tort claims against the United States for money damages caused by a federal government employee acting within the scope of their employment).

Accordingly, the Court shall deny Sims's motion because he has not shown that he has a meritorious claim to justify his requested relief.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Sims's [11] Motion to Set Aside Judgment is **DENIED**. This Memorandum Opinion shall be accompanied by a separate Order.

**SO ORDERED.**

**Dated:** September 18, 2026

Colleen Kollar-Kotelly
COLLEEN KOLLAR-KOTELLY
United States District Judge